UNITED STATES of America, Plaintiff,

v.

William McGILL,
Defendant/Third–Party
Plaintiff,

v.

CHASE MANHATTEN BANK, N.A.,
Third–Party Defendant.

No. 88–8384–CIV–JAG.

United States District Court,
S.D. Florida,
Fort Lauderdale Division.

April 3, 1990.

Blanton B. Allen, Office of the U.S. Atty., Miami, Fla., for plaintiff.

W. Trent Steele, West Palm Beach, Fla., for defendant/third-party plaintiff McGill.

Joel Tabas, Miami, Fla., for third-party defendant Chase.

## ORDER

GONZALEZ, District Judge.

THIS CAUSE has come before the court upon the motion for summary judgment filed by the third-party defendant, Chase Manhatten Bank, N.A. (Chase). The third-party plaintiff, William McGill (McGill), has responded and the motion is ripe for disposition. The government has not moved for summary judgment thereby, requiring a trial as to its claims in the complaint against Mr. McGill.

This is a student loan case. The defendant allegedly went into default and the lender, Chase, assigned this loan to the government in exchange for collecting on the loan's insurance.

The following facts are helpful. In August 1979 and August 1980, the defendant McGill borrowed money from Chase to finance his medical school education. He executed a "Promise to Pay" document for each loan. This document explicitly states, just above the signature line, that, "I shall *promptly* notify the lender or any other holder of this Note *in writing*, of *any* change of name, address, [etc.] ..." (emphasis added). Further, on the reverse side of the promissory notes, the following pertinent provisions appear:

BORROWER'S RIGHTS

3. If the lender assigns (e.g. sells) the loan and the right to receive payments, I must be sent a clear notification which spells out my obligations to the new holder. [*Also see* 42 C.F.R. § 60.8(a)(4)].

4. I have a right to a 9–month "grace period" before repayment begins after I have completed school attendance (and internship and residency in an accredited program ... [*also see* 42 U.S.C. § 294d(a)(2)(B); 42 C.F.R. § 60.8(a)(6) and § 60.8(a)(7); 42 C.F.R. § 60.11(a)].

6. I have a right to deferment of principal repayment if certain conditions exist. Under deferment, I am not required to make payments on the loan principal for a period of time ...

7. The lender will provide me with a repayment schedule before the repayment period begins. [*Also see* 42 C.F.R. § 60.11(e)].

BORROWER'S RESPONSIBILITIES

3. I must immediately notify the lender if any of the following occurs before the loan is repaid:

a. change of address ...

g. cessation of participation in an internship or residency program. [*Also see* 42 C.F.R. § 60.8(b)(3)(i)].

5. I must notify the lender of any occurence which may affect my eligibility to

receive or to continue to receive a deferment of principal payment. (emphasis in titles in original).

McGill admits that he received the loan proceeds for his medical tuition. In his 1979 application for a loan, McGill gave a Nashville, Tennessee site as "permanent home residence address" and listed Pennsylvania as his legal state residence. Under the background section, he listed the address of his parents and his brother, both in Philadelphia. The Note contains the Nashville address.

In terms of the 1980 application, McGill gave a different Nashville address as his temporary residence, and changed his "permanent home residence address" to Wynmour, Pennsylvania. The accompanying background information makes it clear that this latter address is his parents' home. McGill also listed his brother's address again and placed his Nashville address on the Note.

After graduating from medical school, McGill served in the National Health Service Corps. He finished his service on June 30, 1987. In October 1983, McGill applied for a one-year deferment on his loans which was granted in November 1984. On the deferment application, McGill listed a Maryland address where he allegedly had a temporary residence with his sister. His sister has always lived there and still resides there today. McGill's parents moved in 1979 or 1980 to the Wynmoor, Pennsylvania address and have resided there to this day.

In January 1985, McGill applied for another deferment and this was also granted. In June 1985, McGill was transferred to West Palm Beach, Florida. He did not send in any more deferment forms.

When Chase did not receive a deferment form for 1986, the bank proceeded to declare the loan in repayment status. McGill had a 9–month grace period before he had to start making payments and the bank attempted to contact him to notify him of the loan's status and to set up a repayment schedule. Chase telephoned McGill's brother and he did not return the call. McGill's parents and sister deny that they

were ever called by the bank. The bank apparently tried to telephone McGill's parents, but they apparently called the wrong number.

Chase also wrote twelve letters to McGill, but none of them ever reached him. In 1986 and 1987, the bank sent five letters to McGill's parents at an older address in Philadelphia, but each of these letters was sent to an incorrect address at which the parents had never lived. Chase then sent three letters in 1987 to the parents' old address in Philadelphia, where they had not resided since 1979.

Chase next sent three letters to McGill at his sister's address but each of these letters were sent to an address different than that given by McGill in his deferment forms. Finally, Chase wrote twice more to the parents' old address. The bank never wrote to the parents at the Wynmoor address where McGill's parents have lived from 1980 to the present. The bank also never wrote the defendant at the Maryland address.

McGill admits that he lived at many addresses when he was in school and in the Medical Corps. He explains that he gave the Maryland address rather than giving each temporary address because either he was moving very frequently or the mail service at the temporary addresses was unreliable.

After the grace period expired on the loan, Chase placed the loan in default and applied to the government on June 15, 1987 to claim the insurance protecting the loan. On June 23, 1987, McGill contacted Chase and listed his West Palm address. Because the bank had already called in the loan, they did not work with McGill or Sallie Mae, when that agency contacted the bank regarding a possible consolidation of all McGill's student loans.

McGill correctly believed that he was entitled to a 3–year deferment after graduation. See 42 U.S.C. § 294d(a)(2)(C) [three years for National Health Service Corps]; § 294d(a)(2)(D) [allowance for deferments in loans]. However, the law also required McGill, as a borrower, to notify the bank

each year that he wished to exercise that option. *See* 42 C.F.R. § 60.12(c)(1) ["To receive a deferment, ... a borrower must at least 30 days prior to, but not more than 60 days prior to, the onset of the activity and annually thereafter, submit to the lender evidence of his or her status in the deferment activity and evidence that verified deferment eligibility of the activity ... It is the responsibility of the borrower to provide the lender with all required information or other information regarding the requested deferment."].

McGill claims he interpreted the contract as only requiring him to contact the bank if his status changed. Since he had received two deferments and he was entitled to a third, reasoned McGill, he did not have to apply for the last deferment since his status with the Medical Corps had not changed. Further, this is the same approach he took as to the change of address issue. While McGill's approach may have been reasonable, it was not in compliance with the law. Of course, ignorance of the law is not a defense. Student loans are the financial responsibility of the borrower. If McGill wanted to postpone payment, he had an obligation to so apply for this extension.

McGill has filed a third-party complaint against Chase Manhatten alleging the following five bases for relief:

a) refusal of the bank to defer payment on the loan,

b) the bank's neglect in giving the government a wrong address for him such that he did not receive notice of the loan assignment from Chase to the government,

c) the bank did not use substantial effort to collect the loans,

d) Chase did not act in good faith, and

e) Chase did not cooperate with Sallie Mae in McGill's attempt to consolidate the loans.

There are three categories of damages sought: (1) higher monthly loan payments with higher interest since the loan was accelerated, (2) attorneys' fees and court costs, and (3) damage to credit standing.

Chase has asserted in its pleadings that McGill's own negligence constitutes an estoppel and/or waiver of any damages. Specifically, the bank urges the following acts of negligence which should preclude him from recovering: (a) failure of McGill to inform the bank of current residential addresses, (b) failure to submit deferment request forms, and (c) failure to cooperate with the bank in repaying the loan.

The main basis for Chase's summary judgment motion is that all five of McGill's claims are legally insufficient to form the basis for affirmative relief against the bank. The government has not moved for summary judgment. The Court notes, without deciding, that the claims against Chase may be the basis of affirmative defenses against the government in collecting on the notes.

As to McGill's first claim, Chase argues correctly that it never improperly refused to grant a deferment because the borrower never applied for such, as was his obligation under the law. Both the contract and the relevant regulations required McGill to apply for the deferment in writing on at least an annual basis. Given the fact that he applied for two deferments, his past performance certainly is strong evidence of his actual knowledge of this requirement.

McGill has an interesting response. He claims that the parties' course of performance over the life of the loan constituted a modification of the contract. He is apparently claiming that over the seven years of the loan's life, Chase only sent him two deferment forms and thereby, waived strict performance of these provisions of the contract. This argument fails. Even if Chase did send out the deferment forms, it was McGill's legal obligation to apply for the deferment. Chase merely provided the forms as a courtesy. Under the facts of this case, it did not assume a legal duty or provide a basis for detrimental reliance.

The second claim is that the bank gave the government a wrong address for McGill such that he was not informed of the assignment of the note. Chase notes that it was under no duty to give the government a correct address. It argues

that it merely forwarded all addresses on file as received from McGill. The applicable provision, 42 C.F.R. § 60.40 [procedure for filing insurance claims by lender], only required Chase to turn over its file to the United States with all "documentation necessary to litigate a default". Among the documents explicitly listed are the loan application and borrower status forms [forms used by McGill to request a loan deferment] which McGill claims had the correct addresses of his parents and sister.

■ The third claim filed by McGill to recover against the bank is that Chase did not use substantial efforts to collect the loan. The bank argues quite persuasively that there is no duty owed to McGill, the borrower, regarding such a claim.

As to this claim, several regulations do require a student loan lender to follow certain collecting procedures. Section 60.35, Title 42 of the Code of Federal Regulations, requires a lender to "exercise due diligence in the collection of a HEAL loan". To comply, the bank is required to implement the following procedures, *inter alia:* written reminders when payment is late at set time periods; the requirement of a telephone contact, if possible; use of skip-tracing techniques [including contact of any persons named on the promissory note and loan application], use of credit agents, working with credit reporting agencies, and the use of litigation in some cases. However, as Chase points out, McGill does not have standing to assert these claims. He apparently relies upon the language "substantial collection effort" under 42 U.S.C. § 294f(a). However, the requirements in this provision are for the benefit of the government as it explicitly refers to "the Secretary". Moreover, the applicable regulations support this interpretation. *See* 42 C.F.R. § 60.35 and § 60.40. Clearly, Congress wanted the banks to seek a recovery from the borrower prior to making a claim against the insurance. To follow McGill's theory of an implied cause of action, the bank, when suing directly, could be confronted by the defense to a suit on the note that it did not try hard enough prior to filing the action. The facts indicate here that the government may have a cause of action against the bank, but McGill cannot sue on this basis.

■ McGill's fifth claim against Chase concerns the bank's alleged failure to cooperate with Sallie Mae in the consolidation of the defendant's loans. Chase correctly alleges that neither the contract nor any statute or regulation require such cooperation. Further, the facts here negate the claim since the bank had already sold the loan to the government.

■ McGill's last count alleges that Chase failed to act in good faith. Unfortunately, McGill fails to prove that there is an implied term of good faith in the parties' contract or otherwise imposed by law. Alternatively, Chase's affirmative defense is applicable here. Since he failed to comply with several terms of the contract thereby breaching his duty of good faith, he is estopped from obtaining an affirmative recovery against Chase.

Having considered the motion and the above matters, and the record in this cause, it is hereby

ORDERED AND ADJUDGED that the motion of the third-party defendant, Chase Manhatten Bank, for summary judgment is GRANTED. The court finds that there are no *genuine* issues of *material* fact outstanding and that Chase Manhatten is entitled to judgment as a matter of law. Judgment is hereby ENTERED for Chase Manhatten Bank, N.A., and against William McGill on his third-party complaint.

The motion of William McGill for oral argument on the Rule 56 motion is hereby DENIED. The filings made by the parties adequately discuss the applicable facts and the law. The issues presented are not sufficiently complex such that a further hearing is needed.

The motion to strike reply is also hereby DENIED.

This case shall proceed to trial on the claims and defenses asserted by the United States and William McGill.

DONE AND ORDERED.